ÁUREA RAMÍREZ, recurrente, *v.* REGISTRADOR DE LA PROPIE-
DAD, SECCIÓN DE MAYAGÜEZ, JOSÉ M. RAMÍREZ DE ARE-
LLANO, recurrido.

*Número:* G-66-7        *Resuelto:* 27 de junio de 1968

*Enrique Báez García,* abogado de la recurrente; El Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El 22 de noviembre de 1948 Germán Vélez Forestier y Áurea Ramírez contrajeron matrimonio en Mayagüez. Procrearon dos hijos llamados Áurea Brunilda y Germán Wilkin. En 1956 adquirió la sociedad ganancial una finca urbana situada en esa ciudad que fue inscrita a su favor.

Con posterioridad al 1958 la familia Vélez Ramírez se trasladó a Méjico; adquirió domicilio en la capital de esa república. Para diciembre de 1963 mantenía la "casa conyugal" en el número 95 de la Calle 8-A, esquina con Pilares de la Colonia, Reparto Vértiz Narvarte, Departamento 7.

El 10 de septiembre de 1964 la esposa Áurea Ramírez acudió ante el Juzgado Décimo Cuarto Civil de la Capital e instó acción de divorcio por la causal de abandono por más de ocho meses con anterioridad a la fecha de la demanda. [1] Se emplazó al esposo demandado. Éste compareció en el litigio y contestó la demanda diciendo "que se allanaba a los términos de la demanda, pero explicando que aun cuando abandonó el hogar conyugal desde hacía más de diez meses fue porque su esposa le hacía la vida imposible." El 4 de octubre de 1965 se dictó sentencia decretando "la disolución del vínculo matrimonial entre los señores Áurea Ramírez de Vélez y Germán Vélez Forestier, quedando en aptitud para contraer nuevas nupcias, pero el señor Germán Vélez Forestier, al que se le declara cónyuge culpable, no podrá hacerlo sino hasta pasado dos años de la presente sentencia."

El 23 de noviembre de 1965 se declaró que "la sentencia definitiva ha causado ejecutoria y es cosa juzgada para todos sus efectos legales", y se ordenó "Cúmplase con el punto quinto resolutivo (inscríbase en el Registro de su origen la misma al margen de la inscripción de matrimonio de actor y demandado en este juicio) a cuyo fin con las inserciones necesarias gírese atenta carta rogatoria al C. Juez competente en Mayagüez, Puerto Rico, y por los conductos legales procedentes, para que en auxilio de este Juzgado haga la anotación del acta de matrimonio y demás documentos que procedan conforme a las leyes del lugar."

El 25 de noviembre de 1965, se libró "en cumplimiento de lo ordenado en autos", una copia "certificada, debida-

---

[1] El Código Civil de Méjico de 1928, que empezó a regir el 1ro. de octubre de 1932, en su Art. 267, dispone que es causa de divorcio, entre otras:

"VIII—La separación de la casa conyugal por más de seis meses sin causa justificada."

Véase *Leyes y Códigos de México, Código Civil* Novena Ed. Editorial Porrua, S.A., 1963.

mente timbrada, sellada y cotejada" de la sentencia y del "auto que la declara ejecutoriada."

El texto de la ejecutoria, con las constancias de autenticación de firmas y comprobación de cargos u oficios, es como sigue:

"EL CIUDADANO LICENCIADO AGUSTIN MARTINEZ RODRIGUEZ, PRIMER SECRETARIO DE ACUERDOS DEL JUZGADO DECIMO CUARTO CIVIL DE ESTA CAPITAL:
............................................ CERTIFICA .............................................
Que en los autos del juicio Ordinario Civil de Divorcio promovido por ÁUREA RAMÍREZ DE VÉLEZ en contra de GERMÁN VÉLEZ FORESTIER, obran entre otras las constancias siguientes: México, Distrito Federal a cuatro de octubre de mil novecientos sesenta y cinco. ............................................................................

.................V I S T O S para resolver los autos del juicio de Divorcio Necesario seguida por ÁUREA RAMÍREZ DE VÉLEZ en contra del señor GERMÁN VÉLEZ FORESTIER, y apareciendo:........

.................I.—Que el diez de septiembre de mil novecientos sesenta y cuatro se presentó demandando la señora Áurea Ramírez de Vélez al señor Germán Vélez Forestier el divorcio necesario y consecuencias legales diciendo: ser casada, con el demandado, haber procreado en su matrimonio dos hijos de nombres Áurea y Germán, haber establecido su domicilio conyugal en la calle 8-A esquina con Pilares número 95, departamento 7, Colonia Vértiz Narvarte, en esta ciudad. Haber abandonado el esposo dicho domicilio conyugal con más de ocho meses de anticipación a la fecha de la demanda; haberse negado a reintregrarse al hogar conyugal. Citó como fundamento de su demanda los artículos 266, 267 fracción VIII, 291 y demás relativos del Código Civil, 255, 256 y demás relativos del de Procedimientos Civiles. ...................................................................................

.................II.—Que por auto de veintiuno de septiembre de mil novecientos sesenta y cuatro se dio entrada a la demanda y emplazado el demandado contestó diciendo que se allanaba a los términos de la demanda, pero explicando que aún cuando abandonó el hogar conyugal desde hacía más de diez meses fue porque su esposa le hacía la vida imposible. ...................................

.................III.—Por auto de dieciséis de enero de mil novecientos sesenta y cinco se tuvo por producida la contestación, habiendo

replicado la actora por escrito de veinticinco de enero, negando haber dado ella origen a la separación. ........................................

................IV.—Por auto de dos de febrero de mil novecientos sesenta y cinco se tuvo por formulada la réplica, sin que el demandado duplicara, por lo cual se le tuvo por acusada la correspondiente rebeldía por auto de veintidós de febrero de mil novecientos sesenta y cinco..............................................................

................V.—La actora ofreció y rindió como pruebas, la confesional del demandado y la testimonial de la señorita Carmen Apatiga Aguilar y Esperanza Omaña Vidal, [sic] quedando demostrado con tales pruebas y con las actas exhibidas con la demanda: a).—El matrimonio celebrado entre actora y demandada el veintidós de noviembre de mil novecientos cuarenta y ocho; b).—El nacimiento de Áurea Brunilda Vélez Ramírez el día veintisiete de marzo de mil novecientos cincuenta y uno; c).—El nacimiento de Germán Wilkin Vélez Ramírez el diez de marzo de mil novecientos cincuenta y tres; d).—Que el domicilio conyugal lo establecieron en la Calle 8-A esquina Pilares número 95 de la Colonia Vértiz Narvarte, departamento 7 y e). —Que el demandado abandonó el hogar conyugal sin causa justificada desde el mes de diciembre de mil novecientos sesenta y tres. Con lo anterior quedan demostrados los hechos base de la acción y en cuanto al derecho le sirven de base los Artículos 267 Fracción VIII, 283, Sección I, 287, 288, 291, 302, 308 y 311 del Código Civil..............................................................................

................Por lo expuesto y fundado, es de resolverse y se resuelve:

................PRIMERO.—Ha procedido la Vía Ordinaria Civil y se resuelve: ........................................................................................

................SEGUNDO.—Se decreta la disolución del vínculo matrimonial entre los señores Áurea Ramírez de Vélez y Germán Vélez Forestier, quedando en aptitud para contraer nuevas nupcias, pero el señor Germán Vélez Forestier al que se le declara cónyuge culpable no podrá hacerlo sino hasta pasado dos años de la presente sentencia. ................................................................

................TERCERO.—Se declara que los hijos deben quedar bajo la patria potestad de la señora Áurea Ramírez de Vélez, hasta la mayor edad de cada uno de ellos. ................................................

................CUARTO.—Se condena al señor Germán Vélez Forestier al pago de alimentos a la señora Áurea Ramírez de Vélez y a sus dos hijos. ................................................................................

...............QUINTO.—Con copia de esta resolución, inscríbase en el Registro de su origen la misma al margen de la inscripción del acta de matrimonio de actor y demandado en este juicio.....
...............SEXTO.—No se hace especial condenación en costas.....
...............SEPTIMO.—Notifíquese. ...............................................
...............Así definitivamente juzgando lo resolvió y firma el C. Juez Décimo Cuarto de lo Civil Licenciado Andrés Iturbide Valdez. Doy fe. Firmado rúbricas. ...............................
Auto que la declaro ejecutoriada.—México, Distrito Federal a veintitrés de noviembre de mil novecientos sesenta y cinco.— Como se pide en el escrito de cuenta se declara que la sentencia definitiva dictada ha causado ejecutoria y es cosa juzgada para todos sus efectos legales. Cúmplase con el punto quinto resolutivo a cuyo fin con las inserciones necesarias gírese atenta carta rogatoria al C. Juez competente en Mayagüez, Puerto Rico, y por los conductos legales procedentes, para que en auxilio de este Juzgado haga la anotación del acta de matrimonio y demás documentos que procedan conforme a las leyes del lugar. Expídase la copia certificada que se solicita y en su oportunidad archívese el expediente. Notifíquese. Lo acordó y firma el C. Juez. Doy fe. Firmado rúbricas. ...............................................
Y EN CUMPLIMIENTO DE LO ORDENADO EN AUTOS SE EXPIDE LA PRESENTE COPIA CERTIFICADA DEBIDAMENTE TIMBRADA SELLADA Y COTEJADA EN DOS FOJAS [sic] ÚTILES EN LA CIUDAD DE MÉXICO DISTRITO FEDERAL A LOS VEINTICINCO DÍAS DEL MES DE NOVIEMBRE DE MIL NOVECIENTOS SESENTA Y CINCO.
DOY FE. ...............................................................

EL C. SRIO. DE ACUERDOS.

(Fdo.) AGUSTÍN MARTÍNEZ RODRÍGUEZ
LIC. AGUSTÍN MARTÍNEZ RODRÍGUEZ

co.

LEGALIZACION No. 02194

POR ACUERDO DEL C. JEFE DEL DEPARTAMENTO DEL DISTRITO FEDERAL, EL C. LICENCIADO BENJAMÍN OLALDE B., Director General de Gobernación LEGALIZA la firma del C. Licenciado AGUSTÍN MARTÍNEZ RODRÍGUEZ, quien era Primer Secretario de Acuerdos del Juzgado Décimo Cuarto de lo Civil de esta ciudad, en

la fecha en que fue expedido el presente documento y cuya firma que antecede corresponde a él.

México, D.F., a 21 de enero de 1966.

(Fdo.) Firma ilegible.

Hay un sello que dice: 'DIRECCIÓN GENERAL DE GOBERNACIÓN'. ................EL C. LIC. CARLOS GALVEZ BETANCOURT, Oficial Mayor de la Secretaría de Gobernación, por Ac. del C. Secretario, CERTIFICA: que el C. Lic. Benjamín Olalde Bustos era Director General de Gobernación del Departamento del Distrito Federal, el día 21 de los corrientes y suya la firma que antecede. ...........: México, D.F., a 25 de enero de 1966.

(Fdo.) Firma ilegible.

Registrada bajo el Núm. 248.
El Director Gral. de Gobierno.
(Fdo.) Rubén Pérez Peña.
LIC. RUBÉN PÉREZ PEÑA.
/gr.
Hay un sello que dice: 'SECRETARÍA DE GOBERNACIÓN OFICIALÍA MAYOR' y otro sello que dice:
'SECRETARÍA DE GOBERNACIÓN, DIRECCIÓN GENERAL DE GOBIERNO'.
NÚMERO 1685                              F. 8 (Consular)
LA SECRETARÍA DE RELACIONES EXTERIORES CERTIFICA: que el señor LIC. CARLOS GALVEZ BETANCOURT, era Oficial Mayor de Gobernación, el día veinticinco de enero de mil novecientos sesenta y seis, y que es suya la firma que antecede.

México, D.F., a 1ro. de febrero de 1966.

P. O. DEL C. SECRETARIO.
EL SUBDIRECTOR GENERAL DEL SERVICIO CONSULAR
(Fdo.) Luis Alva Cejudo.

Esta Secretaría no asume responsabilidad alguna por el contenido de este documento.
Hay un sello que dice: 'SECRETARÍA DE RELACIONES EXTERIORES. FEB. 1, 1966, DIRECCIÓN GENERAL DEL SERVICIO CONSULAR.'
United Mexican States        )
Federal District             )
City of Mexico               )   SS:

Embassy of the United )
States of America )

I, Edith A. Stensby, Consul of the United States of America at Mexico, D.F., Mexico duly commissioned and qualified do hereby certify that LUIS ALVA CEJUDO whose true signature and official seal are, respectively, subscribed and affixed to the foregoing document, was on the 1st day of February, 1966, the date thereof, Assistant to the Director of Consular Service of the Secretariat of Foreign Relations of Mexico duly commissioned and qualified to whose official acts, faith and credit are due.

The Consular Section of the Embassy assumes no responsibility for the contents of the foregoing document.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of the Consular Service of the United States of America at Mexico, D.F., Mexico, this 3rd day of February 1966.

＇(Signed) Edith A. Stensby
Consul of the United States of America.

Tariff Item No. A830311
Receipt No. 48
Paid in Pesos: $31.25
Hay un sello al relieve que dice: "Consular Service of the United States of America, Mexico, D.F.' "

El 3 de mayo de 1966, Áurea Ramírez radicó ante este Tribunal Supremo, bajo el número Misc. 66-1, un escrito que denominó "Solicitud", como "demandante-peticionaria", contra su anterior esposo Germán Vélez Forestier, como demandado, sobre "Aprobación de Sentencia Extranjera', uniendo al escrito la copia certificada de la sentencia del juzgado mejicano antes relacionada y suplicando que con vista a dicha sentencia, del Art. 52 del Reglamento Hipotecario y de los Arts. 951 a 958 de la Ley de Enjuiciamiento Civil de 1881, determináramos su validez y dispusiéramos "la ejecución de la sentencia que motiva este recurso, expidiendo el correspondiente mandamiento al Registrador de la Pro-

piedad de Mayagüez a todos los fines legales pertinentes", o sea para que en su Registro se inscribiera dicha finca urbana "a nombre de sus actuales dueños, convertidos en condueños como consecuencia de la sentencia de divorcio."

Rehusamos conocer del asunto en primera instancia. Entonces la señora Ramírez presentó la ejecutoria al Registrador de Mayagüez para que el inmueble se inscribiera en común a nombre de los anteriores esposos.

El Registrador devolvió el documento y suspendió su inscripción por medio de la siguiente nota:

"Se devuelve el documento y se suspende la inscripción del mismo por no acreditarse que la sentencia de divorcio dictada por el Juzgado Décimocuarto de lo Civil de la Ciudad de Méjico, Distrito Federal, República de Méjico, decretando la disolución del vínculo matrimonial entre Aurea Ramírez y Germán Vélez y que tiene relación con bienes gananciales situados en Puerto Rico, sea válida y eficaz, que no es contrario al orden público local y que su ejecución haya sido dispuesta por Tribunal competente de acuerdo con los artículos 2(4) y 5 de la Ley Hipotecaria y 52 de su Reglamento y lo resuelto en el caso de Ponce v. Badrena, 74 D.P.R. 225, extendiéndose en su lugar nota de suspensión por 60 días al margen del asiento de presentación número 387, folio 194 del Diario 266, según lo dispone la Ley 73 del 23 de junio de 1958. Mayagüez a 28 de octubre de 1966."

■■■ Como hemos visto, se negó acceso registral a la ejecutoria(2) mejicana mientras no se acreditara: (a) que la sentencia de divorcio que contiene sea válida y eficaz, (b) que no sea contraria al orden. público local y (c) que

---

(2) La palabra *ejecutoria* y la frase *sentencia* ejecutoria significan la misma cosa, esto es, la sentencia que por haberse consentido en primera instancia o confirmado en última instancia ha adquirido firmeza y autoridad de cosa juzgada. En sentido estricto se llama ejecutoria o carta ejecutoria, al documento público redactado solemnemente por el funcionario judicial competente, en el cual se inserta, transcribe o consigna literalmente una sentencia firme. El Art. 368 de la antigua Ley de Enjuiciamiento Civil así la define.

su ejecución haya sido dispuesta por tribunal competente de acuerdo con los Arts. 2 (4) y 5 de la Ley Hipotecaria, 52 de su Reglamento y lo resuelto en el caso de *Ponce* v. *Badrena*, 74 D.P.R. 225 (1952).

El distinguido letrado de la recurrente considera correcto el criterio del Registrador; admite que está obligado a respetar las disposiciones del Art. 52 del Reglamento en cuanto exige que se disponga previamente su ejecución.

Sin embargo, entiende que tanto el mencionado párrafo del Art. 52 del Reglamento, como los Arts. 951 a 958 de la antigua Ley de Enjuiciamiento Civil española que estuvo en vigor aquí desde el 1 de enero de 1886, que tratan "De las sentencias dictadas por Tribunales extranjeros" resultan incompatibles con las condiciones existentes en Puerto Rico en 1898, y en 1966, como consecuencia de la creación del Estado Libre Asociado de Puerto Rico y que ni los Registradores de la Propiedad ni el Tribunal Superior son organismos con poder para trazar pautas generales y determinar uniformemente cuáles disposiciones de nuestra estructura jurídica están en vigor y cuáles no y que tal poder reside en este Tribunal Supremo. Por ello nos pide que decretemos que la sentencia de divorcio mejicana es válida y ordenemos que de ella se tome razón en el Registro de la Propiedad en relación con dicha finca urbana.

Por su parte el ilustrado Registrador recurrido sostiene:

"Aunque las sentencias extranjeras deben ser reconocidas, su inscripción no debe proceder solamente en virtud del mandamiento judicial del juez que la dictó. Es menester que se presente a los tribunales del país para que se determine si debe o no dársele cumplimiento a su ejecutoria.

No incumbe al Registrador dentro de su poder calificador del artículo 18 de la Ley Hipotecaria, apreciar si se han cumplido los requisitos señalados por la jurisprudencia para darle validez a las sentencias extranjeras, de si son contrarias o no al orden público local o de si existen tratados o principios de reciprocidad.

Precisamente ése es el propósito del artículo 52 del Reglamento de la Ley Hipotecaria al disponer que no podrán inscribirse las sentencias dictadas por tribunales extranjeros hasta que el Tribunal Supremo disponga su ejecución, conforme a lo determinado en la Ley de Enjuiciamiento Civil. Aunque en el fondo subsiste la doctrina expuesta en los artículos 5 de la ley y 52 del Reglamento, debe entenderse de acuerdo a la situación prevaleciente, que la referencia a España es a Puerto Rico y la referencia a la Ley de Enjuiciamiento Civil es al Código de Enjuiciamiento Civil y a la ley de evidencia que ahora rigen y la referencia al Tribunal Supremo es al Tribunal competente de acuerdo con la ley de la judicatura."

Existe conformidad entre las partes respecto al punto de que para inscribirse en el Registro las sentencias dictadas por Tribunales extranjeros es preciso que los tribunales locales hayan dispuesto su ejecución. Están en desacuerdo sobre cuál es el foro judicial que debe conocer del asunto, sosteniendo la recurrente que lo es este Tribunal Supremo y, el Registrador, que lo es el Tribunal Superior.

—A—

Concurrimos con el criterio de las partes sobre la necesidad de que se decrete previamente la ejecución de la sentencia extranjera para poderse inscribir.

En el número 4 de su Art. 2 nuestra Ley Hipotecaria dispone que se inscribirán en el Registro:

"Las ejecutorias en que se declare la incapacidad legal para administrar, o la presunción de muerte de personas ausentes, se imponga la pena de interdicción o cualquiera otra por la que se modifique la capacidad civil de las personas en cuanto a la libre disposición de sus bienes."

Pero no sólo se inscribirán las dictadas por nuestros tribunales, sino también las que se dicten en países extranjeros, de concurrir en ellas las condiciones necesarias para que puedan surtir efectos en territorio puertorriqueño. Así lo autoriza el Art. 5 de la propia Ley, según el cual:

"También se inscribirán en el Registro los documentos o títulos expresados en el artículo 2, otorgados en país extranjero, que tengan fuerza *en España* con arreglo a las leyes, y las ejecutorias de la clase indicada en el número 4 del mismo artículo, pronunciadas por Tribunales extranjeros, a que debe darse cumplimiento *en el Reino* con arreglo *a la Ley de Enjuiciamiento Civil.*" (Énfasis nuestro.)

Este precepto se desenvuelve en el Art. 52 del Reglamento Hipotecario en la siguiente forma:

"Los documentos otorgados en el extranjero sólo podrán inscribirse después de ser oficialmente traducidos por la oficina de la interpretación de lenguas o por cualquier funcionario que para ello esté competentemente autorizado.

No podrán inscribirse las sentencias dictadas por Tribunales extranjeros hasta que el *Tribunal Supremo* disponga su ejecución, conforme a lo determinado en la *Ley de Enjuiciamiento civil.*" [3]

La sobrevivencia de la legislación hipotecaria de 1893 se debe, como es sabido, a la Orden Militar Núm. 1 de 18 de octubre de 1898, ratificada por la Sec. 8 del Acta Fóraker de 1900 y por el Art. 57 del Acta Jones de 1917. No obstante sus repetidos arcaísmos y disposiciones ya en franco

---

[3] Los precedentes legislativos de estos artículos de la Ley y su Reglamento son los Arts. 2 y 5 de la Ley Hipotecaria y el 37 del Reglamento, que empezaron a regir en Puerto Rico el 1 de enero de 1880. Estos fueron tomados de los Arts. 2 y 5 de la Ley Hipotecaria Española de 1861 y Art. 9 de su Reglamento.

Los Arts. 2(4) y 5 de la Ley Hipotecaria de España de 16 de diciembre de 1909 y el 49 de su Reglamento de 6 de agosto de 1915, concuerdan con los Arts. 2(4) y 5 de la Ley nuestra y el 52 (párrafo segundo) de su Reglamento.

En la vigente Ley Hipotecaria española de 1944, el Art. 4to. corresponde a nuestro Art. 5to. y el Art. 38 de su Reglamento corresponde al Art. 52, párrafo segundo, del nuestro.

El Art. 2 de la primitiva Ley Hipotecaria no ha variado su numeración en las sucesivas leyes hipotecarias.

En toda esta legislación inmobiliaria se ha mantenido una diferencia de condición entre el documento o escritura notarial que da fe o autentica legalmente los actos o contratos realizados o celebrados por personas particulares y el documento judicial denominado sentencia, auto, providencia o resolución.

desuso o fuera de lugar, esos tres artículos, al igual que otros de los 875 que la integraron originalmente, no han sido, ni son, de imposible aplicación en todo caso.

Comenta Muñoz Morales en sus *Lecciones de Derecho Hipotecario*, Tomo II, pág. 91, (1945) : "Aunque en el fondo subsiste la doctrina expuesta en el artículo 5 de la Ley Hipotecaria, debe hoy entenderse de acuerdo con la nueva situación, que la referencia a España es a Puerto Rico y la referencia a la Ley de Enj. Civil es al Código de Enjuiciamiento Civil y a la Ley de Evidencia que ahora rigen."

Era partidario el Maestro de que se continuara exigiendo el previo reconocimiento y declaración de la validez y eficacia de las ejecutorias extranjeras para su toma de razón en el Registro. En los Arts. 228, 229, 230 y 232 del Anteproyecto de Código Hipotecario de Puerto Rico que preparó en 1948 recogía los principios de los Arts. 2 (4) y 5 de la Hipotecaria y 52 de su Reglamento. En el último de ellos se expresaba:

"Artículo 232. Las sentencias o resoluciones dictadas por tribunales extranjeros serán inscribibles en cuanto afecten bienes inmuebles o derechos reales radicados en Puerto Rico, cuando su ejecución haya sido dispuesta por tribunal o autoridad competente en Puerto Rico, con arreglo a las leyes y convenios internacionales."

La antigua Ley de Enjuiciamiento Civil, 1886, en sus Arts. 950 a 957, prescribía normas para el reconocimiento y cumplimiento de las sentencias dictadas por Tribunales extranjeros. En esos artículos se fijaban los casos en que tales sentencias tendrían fuerza "en el territorio de las islas de Cuba y Puerto Rico" y se regulaba el procedimiento especial llamado "juicio de exequatur" para declararse judicialmente si debía o no darse cumplimiento a la ejecutoria extranjera.

■ Nuestro Código de Enjuiciamiento Civil de 1904, no reprodujo esos artículos de la antigua Ley procesal, ni prescribió normas para el reconocimiento de sentencias ex-

tranjeras. Lo mismo ocurrió con las Reglas de Enjuiciamiento Civil de 1943 y con las de Procedimiento Civil de 1958. Está aceptado que, una vez decretado el reconocimiento, la fase de su ejecución se rige por las mismas disposiciones domésticas en vigor sobre ejecución de nuestras sentencias.

La Ley de Evidencia en su parte dedicada a determinar el valor y efecto de los documentos públicos como evidencia judicial, previene en su Art. 66, que el efecto del fallo de cualquier tribunal de país extranjero con jurisdicción para dictarlo, si se trata de un fallo contra una cosa específica, es concluyente en cuanto al título de la cosa y en todos los demás casos constituye "evidencia indirecta de un derecho entre las partes y sus sucesores en interés", rechazable el fallo, como evidencia, por carencia de jurisdicción, falta de notificación a la parte, colusión, fraude o manifiesto error de hecho o de derecho.

Una cosa es el efecto, peso o valor probatorio de una ejecutoria extranjera a los fines de su admisión o rechazo como evidencia por nuestros tribunales y otra el disponer su ejecución con el especial propósito de inscribirse o anotarse en el Registro de la Propiedad conforme a nuestra Ley Hipotecaria y su Reglamento.

Don Pedro Gómez de la Serna, en su clásica obra *La Ley Hipotecaria, Comentada y Concordada*, Imprenta de la Revista de Legislación, Madrid, 1862, págs. 381–383, Tomo I, hace relación a la diferencia de condición entre el documento notarial y la ejecutoria; señala las razones fundamentales que justifican la exigencia del previo reconocimiento judicial de los fallos extranjeros que puedan afectar bienes inmuebles o derechos reales sitos en España. Roca Sastre, comenta que a los fines de su inscripción la ejecutoria extranjera, además de los requisitos generales exigidos a toda titulación, debe reunir requisitos especiales, toda vez que "las circunstancias de su origen justifican estas particularidades." *Derecho Hipotecario*, 5ta. Ed. Barcelona, 1954, Tomo II,

pág. 165. Sanz Fernández, en su obra *Instituciones de Derecho Hipotecario*, Ed. Reus, 1953, Tomo II, pág. 326, nos dice que la necesidad de *exequatur* es general y se refiere a toda clase de resoluciones judiciales, excepto cuando han recaído en acto de jurisdicción voluntaria en que no haya mediado oposición.

Morell en su *Comentarios a la Legislación Hipotecaria*, 1916, Reus, Madrid, Tomo Primero, págs. 623–624, hablando sobre las ejecutorias extranjeras, dice:

"A ellas se refiere la segunda parte del art. 5to. de la ley, y el 49 del reglamento. Son inscribibles las ejecutorias dictadas por Tribunales extranjeros, ya con relación a bienes inmuebles situados en España, ya en cuanto afecten a la capacidad de las personas, cuando su ejecución haya sido dispuesta por Tribunal o Autoridad competente, con arreglo a las leyes y convenios internacionales procediéndose según lo dispuesto en la ley de Enjuiciamiento Civil.

'Dado el cosmopolitismo que debe caracterizar la justicia, dice Torres Campos, si ha de mantenerse la comunidad internacional, es indispensable que las sentencias dictadas en un país no tengan su límite en la frontera del Estado, sino que se extiendan al territorio extranjero. Los derechos reconocidos a un ciudadano por una sentencia judicial, dictada por los Tribunales de una nación civilizada, no es justo, en principio, que le sean negados en otra. Todos los Estados, en prestigio de su autoridad y en beneficio de sus súbditos, deben contribuir a la obra común de la realización del Derecho.'

'Es una regla fundamental del derecho público de todas las naciones, añade en otro lugar, y como natural limitación a lo expuesto que una sentencia dada en un país, no puede ser de pleno derecho ejecutoria en otro, en virtud de mandamiento sólo del juez por quien ha sido dictada. En todas partes es menester, para que una sentencia extranjera pueda ser ejecutada, que se presente a los Tribunales del país, que, apropiándosela, le dan en cierto modo el bautismo de la nacionalidad, de la que toma carácter ejecutivo.'

Las diferencias, a veces inconciliables, que se encuentran entre unas y otras legislaciones, explican por otra parte la necesidad de ese requisito."

En *Ponce* v. *F. Badrena e Hijos, Inc.*, 74 D.P.R. 225 (1952), decisión citada por el Registrador en su nota, se trata de una demanda en cobro de una sentencia firme dictada por un tribunal de Buenos Aires, República Argentina. Confirmamos el fallo del antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan, que declaró con lugar la demanda y condenó a la demandada a pagar la cantidad reclamada de $16,411.80, moneda americana, intereses legales, costas y honorarios de abogados. Fue atacada la validez y eficacia de la sentencia argentina por una multiplicidad de fundamentos, entre ellos, la falta de jurisdicción del tribunal argentino, todos los cuales fueron considerados extensamente en nuestra interesante opinión. En ella, a la pág. 243, dijimos:

"En vista de ello, una sentencia argentina debe ser considerada por nuestros tribunales como concluyente en cuanto a los méritos del caso, sujeto a las disposiciones del artículo 428 de nuestro Código de Enjuiciamiento Civil, que discutiremos más adelante. La propia Corte Suprema de los Estados Unidos y otros tribunales estadounidenses han resuelto que una sentencia extranjera es concluyente y debe ser reconocida en los Estados Unidos si el país en donde se dictó la sentencia reconoce las sentencias dictadas en los Estados Unidos, siempre y cuando que la corte extranjera haya actuado con jurisdicción, que se hayan cumplido los requisitos fundamentales de un debido proceso de ley y que la sentencia no sea contraria al orden público local, no sea tan claramente arbitraria que sea contraria a los principios elementales de la justicia esencial y se haya dictado por un tribunal imparcial. [Citas] De los autos no surge que la sentencia adolezca de los defectos ya mencionados y, por lo tanto, ella debe ser reconocida por nuestros tribunales. Además, la República Argentina tiene un sistema de leyes adecuado y propio de un país civilizado."

Nuestro estatuto de orden público, con sede en el tercer párrafo del Art. 11 del Código Civil, nos impide reconocer eficacia y validez a cualquier sentencia extranjera que contravenga nuestras leyes prohibitivas concernientes

a las personas, sus actos o sus bienes y las que tienen por objeto el orden público y las buenas costumbres. Ya hemos visto que un fallo extranjero puede ser rechazado mediante evidencia de carencia de jurisdicción, falta de notificación a la parte, colusión, fraude o manifiesto error de hecho o de derecho.

■ Reconocemos, desde luego, que el ámbito de la facultad calificadora conferida por nuestra Ley Hipotecaria al Registrador, no comprende atribuciones para tomar conocimiento judicial de leyes extranjeras, ni para apreciar si se han cumplido los requisitos señalados por la jurisprudencia para darle validez a las sentencias extranjeras, o determinar si son o no contrarias al orden público local o de si existen tratados o principios de reciprocidad. Ya hemos resuelto que las presunciones controvertibles de la Ley de Evidencia no suplen la certeza que la inscripción de documentos exige. *Esteves* v. *Registrador*, 43 D.P.R. 7 (1932).

■ Para hacer frente a tal situación el Art. 52 del Reglamento previene que los tribunales dispondrán la ejecución como paso previo para la correspondiente inscripción o anotación en el Registro cuando de algún modo afectaren bienes inmuebles o derechos reales sitos en Puerto Rico.

[7] Careciendo nuestra legislación procesal de un trámite especial para el reconocimiento de la validez y eficacia de sentencias extranjeras, las partes que interesen tal reconocimiento deben acogerse al procedimiento ordinario prescrito por nuestras Reglas de Procedimiento Civil de 1958.

Como dice Jaime Guasp, en su *Derecho Procesal Civil*, 2da. Ed., 1961, págs. 1263–1272, el reconocimiento de decisiones extranjeras es uno de facilitación que tiende a reconocer el título que constituye requisito indispensable de un proceso principal; va dirigido a reclamar tal reconocimiento, no a la ejecución del fallo extranjero; es un proceso declarativo en que se satisfacen por sentencia pretensiones de par-

tes; el Tribunal que entiende en el mismo tiene una "función de instancia"; existen "partes enfrentadas", siendo demandante el que pretende el reconocimiento de la sentencia extranjera y demandado, la persona frente a quien se dirige el reconocimiento.

La decisión extranjera es llevada a los tribunales con objeto de que se le otorgue la eficacia que le correspondería si se tratara de una decisión puertorriqueña inscribible.

■ Como en el *juicio de exequatur* regulado por la Ley de Enjuiciamiento antigua, al que ya nos hemos referido, el procedimiento debe comenzar con una demanda redactada en la forma usual, en la que se haga una breve referencia a la sentencia extranjera, se exponga haberse dictado por tribunal competente, con jurisdicción sobre las personas o partes en la acción, su condición de ser firme, haberse dictado a consecuencia de una acción personal, que la obligación para cuyo cumplimiento se haya procedido es lícita en Puerto Rico, que la sentencia es ejecutoria conforme a la ley de la nación en que se ha dictado y llena los requisitos necesarios para ser considerada como auténtica.

Se deberá acompañar los documentos que sustancian esas alegaciones y muy especialmente aquél en que conste la sentencia extranjera, debidamente traducidos al español si no están redactados en este idioma.

Cuando se trate de un asunto de orden o interés público o que puede afectar intereses de personas incapacitadas, lo aconsejable, conforme a las circunstancias específicas concurrentes en cada caso, es hacer parte, u ordenar que se haga parte, al Ministerio Fiscal, para que éste pueda defender los intereses del orden público o de personas incapacitadas que puedan ser afectados adversamente por el procedimiento.

Comparecidas las partes y trabada la contienda, o anotada la rebeldía por incomparecencia, deberá en todo caso, celebrarse el juicio en la forma ordinaria.

■ El tribunal al cual se acuda no puede conocer de los méritos o del fondo del negocio o asunto objeto de la sentencia extranjera; se concretará, luego de resolver las impugnaciones admisibles que se formulen, si la sentencia se dictó con jurisdicción, si cumple los requisitos fundamentales del debido proceso de ley, si contiene alguna disposición contraria al orden público, a la soberanía o a los intereses del Estado Libre Asociado de Puerto Rico, a los principios elementales de una justicia esencial, o a las buenas costumbres, y, como explica Manresa, a la pág. 596 del tomo 4 de su obra *Ley de Enjuiciamiento Civil*, 7ma. Ed. Reus, Madrid (1955): ". . . solo cuando no ocurra dificultad sobre ninguno de dichos puntos, otorgará la ejecución o cumplimiento de la sentencia extranjera." En caso de denegarse el reconocimiento y ejecución, se ordenará la entrega de la ejecutoria a la parte correspondiente. (⁴)

—B—

■ Respecto al Tribunal a quien nuestra legislación atribuye jurisdicción para entender en el proceso, resolvemos que es al Tribunal Superior el que debe de conocer del asunto. Es un tribunal de jurisdicción general, de función de instancia, y ordinariamente sería el tribunal en que se hubiera seguido en Puerto Rico el juicio en que se dictó la sentencia extranjera.

No debemos elaborar más sobre este punto. Nos basta lo que sobre él expusimos en nuestra resolución del 30 de junio de 1966 en los siguientes términos:

_____

(⁴) Las normas de trámite que aquí señalamos a la luz de los precedentes legislativos y de los comentarios de reconocidos procesalistas españoles, no deben tomarse como excluyentes de cualesquiera otras que también puedan adecuada y prontamente facilitar el reconocimiento y disposición de ejecución de sentencias extranjeras a los propósitos registrales que correspondan.

"Después de examinar cuidadosamente: (1) Las indicadas disposiciones de nuestra Ley Hipotecaria y su Reglamento; la Orden General Núm. 1 de 18 de octubre de 1898, respecto a la no subsistencia de leyes que resultaren en todo o en parte incompatibles 'con el cambio de condiciones realizado en Puerto Rico'; los artículos 950 a 957 de la antigua Ley de Enjuiciamiento Civil, 1886; la Ley de 12 de marzo de 1903, sec. I, 4 L.P.R.A., Tomo 1A, Ed. 1965, los vigentes arts. 417, 419, 420 y 428 del Código de Enjuiciamiento Civil, ed. 1933; el Inciso 3 del Artículo V de nuestra Constitución; las secciones 1, 5, y 7 de la Ley de la Judicatura de 1952; nuestras decisiones en *Autoridad sobre Hogares* v. *Sagastivelza*, 71 D.P.R. 436 (1950) y *Chamberlain* v. *Delgado*, 82 D.P.R. 6 (1960); (2) y la Regla 1 de Procedimiento Civil (1958); y luego de considerar que se trata de un asunto contencioso en primera instancia, entre partes demandante y demandada, en que se plantearán, ventilarán y resolverán cuestiones de hecho y de derecho, conforme a la prueba que por primera vez aporte cada lado de la contienda,

Resolvemos: Que aunque en su fondo, deben mantenerse los principios jurídicos en que se inspiran los arts. 2(4) y 5 de nuestra Ley Hipotecaria y 52 de su Reglamento, tales disposiciones y aquellas de la antigua Ley de Enjuiciamiento Civil, 1886 a que hacen alusión, han dejado de regir y carecen en absoluto de eficacia legal para investirnos de aquella competencia judicial indispensable para conocer en primera instancia del tipo o clase del asunto contencioso a que se refiere el escrito inicial o solicitud presentada por la 'demandante peticionaria' (3) y que sólo podremos conocer del mismo por la vía del recurso gubernativo, dispuesto por la Ley de 1 de marzo de 1902 contra la calificación del Registrador correspondiente que le niegue a dicho fallo extranjero su acceso registral, o por la vía de revisión o apelación contra la sentencia final de alguna Sala de Tribunal Superior que conceda o niegue el remedio que se nos pide y para lo cual, en primera instancia, no tenemos competencia alguna."

---

"(2) Resolvimos en ellos que la función esencial del Tribunal Supremo en la administración de justicia en Puerto Rico es, generalmente, servir como órgano de revisión o apelación y no como tribunal de primera instancia."

La recurrente debió acudir primeramente ante el Tribunal Superior en solicitud de que se dispusiera la ejecución del fallo mejicano. Si lo lograba, entonces procedía presentar la ejecutoria al Registro de la Propiedad para la inscripción que la misma pudiera motivar. De la calificación adversa que hiciera el Registrador podía interponer el recurso gubernativo y así llegar hasta nos. Si el Tribunal Superior denegaba la ejecución podía pedirnos la revisión.

No se podía eludir el indispensable paso de acudir ante el Tribunal Superior, por las dificultades que ello representaba para el Registrador. En justicia para la recurrente, debemos hacer constar, que en nuestra resolución del caso Misc. 66-1, que en parte hemos transcrito, nos expresamos en forma que la hacía susceptible de entenderse en el sentido de que la recurrente podía optar entre acudir al Registro de la Propiedad o ir al Tribunal Superior, para llegar ante nos en el recurso apropiado. Esa, desde luego, no fue nuestra idea, ya que si el principio que anima los Arts. 2(4) y 5 de la Ley y 52 del Reglamento debía subsistir, debía obtenerse el previo reconocimiento judicial, pero al nivel de nuestros tribunales de instancia de jurisdicción general.

*Se confirmará la nota recurrida.*

El Juez Asociado Señor Rigau no intervino.