# 2000 DTA 98

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I - SAN JUAN**

CONCEPCION DE LA GUADALUPE
Recurrida

v.

FELIX ROBERTO JIMENEZ
Peticionario

Núm. KLCE-99-01246

San Juan, Puerto Rico, a 27 de enero de 2000

Panel integrado por su Presidenta, la Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez González Román

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Félix Roberto Jiménez, en adelante, Sr. Jiménez, recurre de una resolución emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 30 de septiembre de 1999 y notificada el 4 de octubre del mismo año, la cual declaró No Ha Lugar la oposición del Sr. Jiménez a ser encontrado incurso en desacato, so pena de cárcel, por supuestas deudas alimentarias y pautó vista para continuar con los procedimientos relacionados al desacato en la cual el Sr. Jimémez tendría que probar haber pagado dicha deuda. Se expide el auto y se revoca la resolución recurrida.

La Sra. Concepción de la Guadalupe Amell Limardo (Sra. Amell Limardo), ciudadana dominicana y el Sr. Jiménez, ciudadano argentino, contrajeron matrimonio el 8 de dielembre de 1971 en la República Dominicana. Durante el procrearon tres hijos: Claudia Carolina Jiménez Amell, nacida el 19 de febrero de 1973, Paula Patricia Jiménez Amell, nacida el 7 de noviembre de 1977 y Félix Roberto Jiménez Amell, nacido el 2 de septiembre de 1980. Todos nącieron en la República Dominicana y mantienen su domicilio en dicha república.

El 20 de septiembre de 1994, un tribunal dominicano decretó el divorcio de las partes de epígrafe, por la

causal de mutuo consentimiento. En los acuerdos relativos al divorcio, se estableció que Paula Patricia y Félix Roberto, menores a la fecha del divorcio, permanecerían bajo la custodia y tutela de la Sra. Amell Limardo. Nada se estipuló en cuanto a pensiones alimentarias de los hijos. La Sra. Amell Limardo, no obstante, renunció su derecho a pensión, según las leyes dominicanas.

El 16 de marzo de 1995, el Sr. Jiménez suscribió una declaración jurada ante notario en San Juan, Puerto Rico, en la cual se comprometió a pasarle una pensión mensual de mil dólares ($1,000.00 U.S.) a sus hijos Paula Patricia, de 17 años de edad y Félix Roberto de 14. Este compromiso expiraría cuando Félix Roberto adviniera a la mayoría de edad.

El 18 de marzo de 1998. la Sra. Amell Limardo solicitó, mediante procedimiento de *exéquatur*, la convalidación de la sentencia de divorcio dominicana en nuestra jurisdicción para poder ejercer *"en Puerto Rico el derecho al cobro de la pensión alimentaria que le adeuda el demandado [...]"*. Tras ser personalmente emplazado, el Sr. Jiménez presentó una moción de prórroga fundamentada, *inter alia*, en razones médicas, las cuales acreditó fehacientemente. En ésta, el Sr. Jiménez alego no haber incumplido deuda alguna.

El 16 de junio de 1998, la Sra. Amell Limardo le notificó al Sr. Jiménez una moción solicitándole al tribunal señalamiento de vista en rebeldía a la siguiente dirección: Calle Fuentes 250, Apto. 5, San Juan, P.R., 00922. No obstante, la notificación fue devuelta por el correo, toda vez que dicha calle no existía. El 8 de octubre de 1998, el tribunal recurrido procedió a celebrar la vista en rebeldía según solicitada. El 26 de octubre de 1998, el tribunal recurrido, sin la comparecencia del Sr. Jiménez, dictó sentencia de *exéquatur* otorgándole validez al decreto de divorcio dominicano y *"reconoció"* la declaración jurada prestada por el Sr. Jiménez un año más tarde en Puerto Rico. El 30 de octubre de 1998, dicha sentencia se notificó a la dirección por el correo descrita como inexistente. Por ello, el tribunal ordenó que la sentencia se notificara por edictos, lo cual se efectuó el 19 de febrero de 1999.

Mediante moción de 5 de abril de 1999, la Sra. Amell Limardo solicitó que se celebrara vista de desacato, toda vez que el Sr. Jiménez había incumplido su obligación alimentaria conforme a lo dispuesto en la sentencia del 26 de octubre de 1999. Mediante orden de 20 de abril de 1999, notificada 6 días después a la dirección inexistente, el tribunal recurrido citó al Sr. Jiménez para que *"sin excusa o pretexto alguno [...] mostrar[a] causa por la cual no deba ser encontrado incurso en desacato y [se] orden[e] su arresto e ingreso en una institución, hasta tanto cumpla con el pago de pensión alimentaria y honorarios de abogado"*.

Según alega el Sr. Jiménez, por causa de un error tipográfico en los emplazamientos anteriores, ■ éste no vino a enterarse de la sentencia en rebeldía sobre *exéquatur*, de la incorporación de su declaración jurada a la misma, de la concesión de alimentos y de la posibilidad de ser ingresado a la cárcel por la deuda alimentaria, hasta junio de 1999, fecha en que se le citó personalmente la solicitud de desacato. El 20 de julio, el Sr. Jiménez presentó oposición a la moción de desacato y solicitó transferencia de vista. El Sr. Jiménez presentó todas sus defensas en esta oposición.

El 21 de julio de 1999, el tribunal recurrido suspendió la vista y le solicitó a las partes que sometieran sendos memorandos de derecho en relación a la controversia sobre la mayoría de edad de los hijos. El 30 de septiembre de 1999, el tribunal *a quo* emitió una resolución, notificada el 4 de octubre del mismo año, resolviendo no sólo que procedía, so pena de desacato (y posible cárcel), el pago de mil dólares mensuales ($1,000.00) en alimentos, sino que el asunto de la edad de los hijos era inmaterial, toda vez que según la jurisprudencia vigente, *"cuando un hijo se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad"*.

El 3 de noviembre de 1999, el Sr. Jiménez acudió ante nos mediante moción en auxilio de jurisdicción y auto de *certiorari* solicitando la paralización de los procedimientos de desacato y planteando, esencialmente, los siguientes errores: 1) que el tribunal recurrido erró al entender que procedía una moción de desacato por pensión alimentaria basada en una declaración jurada; 2) que no se podía imponer pensión alimentaria sin conceder una vista de alimentos, particularmente cuando la sentencia de divorcio dominicana nada disponía sobre los alimentos

de los hijos y 3) que erró el tribunal recurrido al declarar irrelevante el tema de la edad de los hijos. Atendida la cuestión fáctica preliminar, podemos proseguir.

El aspecto medular del asunto que nos ocupa es determinar si, según los hechos particulares del caso, nacidos de un proceso de *exéquatur*, el tribunal recurrido tiene facultad para imponer un desacato, con posibilidad de encarcelación, en virtud de una promesa de pago de alimentos supuestamente incumplida. Por los fundamentos que expondremos a continuación, resolvemos que el tribunal recurrido no tenía tal facultad y, por ende, revocamos la resolución recurrida.

Primeramente, cabe aquí repasar la naturaleza del procedimiento de *exéquatur*. En términos generales, el derecho internacional privado define el *exéquatur* como el procedimiento mediante el cual una corte local otorga reconocimiento y validez una sentencia dictada por un tribunal de un país extranjero. *Silva Oliveras v. Durán Rodríguez,* 119 D.P.R. 254 (1987) El fundamento para requerir el *exéquatur* para validar una sentencia extranjera es la soberanía territorial, es decir, como las facultades jurisdiccionales y coercitivas de un país carecen de eficacia más allá de sus fronteras, depende del país receptor si aceptará o no la sentencia extranjera. *Silva Oliveras v. Durán Rodríguez supra*; véase, además, González, Fernández y Porrúa, *Derecho Internacional Privado:* Parte Especial, Oviedo, Imprenta GOFER, 1984, Vol. I, pág. 373. ▉ Para lograr dicha validez jurídica dentro de nuestro ordenamiento, una sentencia extranjera debió haber sido emitida por un tribunal competente y con jurisdicción, cumpliendo con el debido proceso de ley, debió dictarse por un adjudicador imparcial, debió proveerle notificación adecuada a los afectados, no pudo haber sido dictada mediando fraude, y no puede atentar contra la moral o el orden público del país emitente ni del receptor. *Id; Ef. Litográficos v. Nat. Paper & Type Co.,* 112 D.P.R. 389 (1982). Según el Tribunal Supremo, el tribunal al cual se le solicite el *exéquatur* se concretará, luego de resolver los planteamientos de índole procesal que sean pertinentes, a determinar si la sentencia cumplió con todas las normas del Derecho Internacional Privado que expusimos [...]. *Márquez Estrella, Ex Parte,* 128 D.P.R. 243, 255 (1991).

Así, este procedimiento sólo se utiliza para reconocer una sentencia extranjera. Por ello, un tribunal no puede, dentro de un de *exéquatur*, entrar en otros asuntos, conocer de los méritos o del fondo del negocio o asunto objeto de la sentencia extranjera. *Ramírez v. Registrador,* 96 D.P.R. 342 (1968). Es preciso notar que el *exéquatur* guarda cierta semejanza con los llamados *"procedimientos de jurisdicción voluntaria"* o *"Ex Parte",* los cuales tienen la característica común de que no son contenciosos, se tramitan a requerimiento de parte interesada, y se tramitan sólo si existe el consentimiento unánime de todos los interesados. Puesto que en la jurisdicción voluntaria hay ausencia total de discusión o controversia entre las partes, la actuación de los órganos del Estado (entiéndase los tribunales), se concreta a certificar y dar autenticidad al acto que se persigue para así responder a una formalidad exigida por ley. Tribunal Supremo, Secretariado de la Conferencia Judicial, Jurisdicción Voluntaria: Informe y Reglamentación, 1996, pág. 6. Por ello, insertar una controversia *"mayoría de edad"* y sobre *"alimentos entre parientes"* en un procedimiento no contencioso, como el *exéquatur*, no procede bajo ningún supuesto.

Vistas estas normas, debemos concluir que la inclusión en la demanda de *exéquatur* de los alimentos solicitados por la Sra. Amell Limardo (basados en la promesa de pago del Sr. Jiménez) no tenía lugar dentro de ese proceso *sui generis*. Igualmente, el foro recurrido erró al considerar, y de hecho unir, dos eventos independientes: la convalidación de la sentencia extranjera y la promesa de pago. Recordemos que la sentencia de divorcio, dictada el 20 de septiembre de 1994, nada dispuso sobre los alimentos de los hijos y la promesa del Sr. Jiménez se llevó a cabo, no sólo en otra jurisdicción, Puerto Rico, sino que ocurrió al siguiente año.

Hay, además, razones independientes por las cuales el foro *a quo* erró al darle curso a un proceso de cobro de pensiones alimentarias nacido de un procedimiento de *exéquatur*. Primero que nada, dado el hecho que la deuda contraída por el Sr. Jiménez no era, *a strictu sensu*, una obligación alimentaria, sino una deuda autoimpuesta válida y exigible, ▉ no cabe hablar de desacato alguno, toda vez que en el Estado Libre Asociado, por imperativo constitucional, Art. 2 sec. 11, no existe el encarcelamiento por deuda, salvo en casos de incumplimiento de orden judicial de pago de pensión alimentaria. *Viajes Lesana, Inc. v. Saavedra,* 115 D.P.R.

703 (1984). De hecho, el caso de autos guarda gran semejanza con lo suscitado en *Pabón Rodríguez y Díaz López, Ex Parte, 132* D.P.R. 898 (1993). En ese caso, un matrimonio se disolvió por consentimiento mutuo. Los ex-esposos estipularon que él le pagaría cien dólares ($100.00) mensuales a ella hasta llegar a siete mil dólares ($7,000.00). El Tribunal de Instancia aprobó la estipulación, pero el ex-esposo no pagó. El Tribunal Supremo resolvió que aunque la controversia tenía su génesis *"dentro del amplio campo de las relaciones de familia",* en realidad se trataba de una relación patrimonial privada, una deuda, y no una pensión alimentaria. Por ello, no procedía la encarcelación por desacato.

Además, el procedimiento para fijar una pensión alimentaria es uno muy particular, en el cual lo esencial es determinar, mediante prueba a esos efectos, la capacidad económica y recursos del alimentante *vis a vis* la necesidad del alimentista. Art. 146, Código Civil, *supra*. Por ello es que las estipulaciones sobre los alimentos de los hijos no obligan a un tribunal. *Otero Fernández v. Alguacil,* 166 D.P.R. 733 (1985). Hay todo un esquema reglamentario, el cual incluye guías mandatorias para la determinación y modificación de pensiones alimentarias, el cual un tribunal no puede esquivar y mucho menos obviar. Véase, Ley Núm. 5 de 30 de Diciembre de 1986, según enmendada, *"Ley de Sustento de Menores",* 3 L.P.R.A. sec. 501, *et. seq.* ■

Antes de finalizar, debemos hacer notar que la conclusión del tribunal recurrido fundada en *Key Nieves v. Oyola Nieves,* 166 D.P.R. 261 (1985), en cuanto a que la edad de los hijos del hoy disuelto matrimonio Jiménez-Amell es irrelevante es totalmente improcedente. Primero que nada, el estatuto personal que a éstos les aplica es el de la República Dominicana. ■ Es un principio de derecho internacional privado, admitido por la jurisprudencia de los tribunales y especialmente sancionado por el Art. 9 del Código Civil, 31 L.P.R.A. sec. 9, que la ley personal es la del país a que se pertenece, el país de domicilio, y sus disposiciones siguen a los individuos regulados no importa donde estén, la llamada *Lex Patriae* o *Lex Domicilii. Martínez v. Viuda de Martínez,* 88 D. P.R. 443 (1963); *Babilonia v. Registrador,* 62 D.P.R. 688 (1943). ■ Siendo los hijos del disuelto matrimonio Jiménez-Amell ciudadanos nacidos y domiciliados en la República Dominicana y estando éstos, al presente, físicamente dentro del territorio de dicha república hermana, no podemos arribar a otra conclusión: que la disposición sobre mayoría de edad aplicable es la estatuida en el Art. 488 del Código Civil dominicano, la cual fija la mayor edad en diceciocho (18) años cumplidos. ■ Más allá de nuestras costas, el Código Civil puertorriqueño, sólo persigue a los domiciliados del Estado Libre Asociado. Aplicarle nuestro Código Civil a ciudadanos dominicanos constituiría una inaceptable extensión extraterritorial de nuestras leyes, máxime cuando éstos ni tan siquiera han pisado nuestra jurisdicción. Cf. *Pueblo v. Castro García,* 120 D.P.R. 740 (1988). Segundo, y arguendo, de haber aplicado en el caso de autos las disposiciones de nuestras leyes y jurisprudencia, para que aplicara el citado caso de *Key Nieves,* las partes interesadas tenían que presentar prueba de haber comenzado unos estudios o profesión durante la minoridad para que ello cualificara como *"alimentos".* En el caso que nos ocupa, el tribunal recurrido arribó a esta conclusión sin tan siquiera existir en los autos una alegación a esos efectos y de todos modos erró al aplicarles nuestro estatuto personal.

Lo que procedería para cobrar la deuda contraída por el Sr. Jiménez sería una acción independiente en cobro de dinero. Obviamente, sería apropiado que los acreedores, hoy mayores de edad según la ley dominicana, comparecieran personalmente, toda vez que éstos son partes indispensables y su madre ya no goza de capacidad para representarles.

Por los fundamentos expuestos, se expide el auto y se revoca la resolución recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General