**En el Tribunal Supremo de Puerto Rico**

| | |
|---|---|
| Elizabeth Josephine Sosa Hernandez, Pedro Guanil Igaravidez<br><br>Recurrente<br><br>.V<br><br>Hon. Margarita M. Borras Marín, Registradora de la Propiedad, Sección de Fajardo<br><br>Recurrida | Recurso Gubernativo<br><br>**98TSPR82** |

Número del Caso: RG-96-4

Abogados Parte Demandante: Recurrente:

    Lcdo. Raúl Muñoz González

Abogados Parte Demandada: Recurrida:

    Lcda. Margarita M. Borrás Marín

Abogados Parte Interventora:

Tribunal de Instancia:

    Registro de la Propiedad, Sección de Fajardo

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 6/26/1998

Materia: **Recurso Gubernativo**

        Este documento constituye un documento
        oficial del Tribunal Supremo que está sujeto

a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Elizabeth Josephine Sosa

Hernández, Pedro Guanil

Igadavidez

Recurrentes

v. RG-96-4 RECURSO

GUBERNATIVO

Honorable Margarita M. Borrás

Marín, Registradora de la

Propiedad, Sección de Fajardo

Recurrida

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR **REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 26 de junio de 1998.

Elizabeth Josephine Sosa Hernández y Pedro Guanil Igadavidez, éx-cónyuges, recurren ante este Tribunal, mediante recurso gubernativo, en revisión de la calificación final hecha por la Registradora de la Propiedad de Fajardo, Hon. Margarita M. Borrás Marín, en adelante la Registradora, denegando la inscripción de una escritura presentada por ellos.

Debemos resolver si actuó correctamente la Registradora al denegar la inscripción por considerar que la sentencia que divorció a los recurrentes, dictada por un tribunal del estado de Nueva York, debía ser convalidada por un tribunal local para

poder ser aceptada como un documento complementario. **Confirmamos**.

**I**

Los recurrentes, vecinos de Nueva York, eran co-titulares registrales de un inmueble sito en el Municipio de Luquillo. En relación con dicho inmueble, y con posterioridad a su divorcio, otorgaron el 30 de diciembre de 1991 la escritura pública núm. 142 sobre rectificación de cabida, segregación, constitución de servidumbre, liquidación y adjudicación de bienes, ante el notario Raúl Muñoz González. En dicho instrumento público, los ex-cónyuges fueron representados por su apoderado Milton Flores Sierra. El 27 de mayo de 1992, la escritura se presentó para su inscripción ante el Registro de la Propiedad, Sección de Fajardo. Se acompañó con la misma, entre otros documentos, la sentencia que decretó el divorcio de los recurrentes, emitida el 5 de julio de 1984 por la Corte Suprema del Condado de Suffolk, Nueva York.

**Luego de calificar la referida escritura, la Registradora denegó su inscripción y notificó a los recurrentes, el día 12 de marzo de 1996, los siguientes defectos:**

> **"1) Falta [la] certificación de vigencia de los poderes a la fecha de[l] otorgamiento del documento.**
>
> **2) La sentencia de divorcio debe ser convalidada por el Tribunal Superior de Puerto Rico. (Artículo 59.1 [del] Reglamento Hipotecario)."**

La primera de estas faltas fue corregida mediante la presentación de las correspondientes certificaciones emitidas por el Registro de Poderes y Testamentos de Puerto Rico, en las cuales se acreditaba la vigencia de los poderes.

En relación con la segunda falta notificada, los recurrentes presentaron, oportunamente, un escrito de recalificación. El 2 de mayo del 1996, la Registradora reiteró su determinación original. Inconformes, los recurrentes radicaron el presente recurso gubernativo alegando que erró la Registradora al requerir la convalidación de la sentencia de divorcio por un tribunal local y al no inscribir una escritura que, según ellos, cumplía con todos los requisitos de ley.

El 11 de junio de 1996, la Registradora recurrida presentó el correspondiente alegato en apoyo de su actuación. Habiendo comparecido las partes y estando en posición de resolver el presente recurso gubernativo, procedemos a así hacerlo.

## II

En su primer señalamiento de error, los recurrentes argumentan que la sentencia de divorcio aludida no tiene que ser convalidada por un tribunal local, ya que la misma fue presentada como documento complementario con el único propósito de corroborar el hecho de que los otorgantes son solteros y que, por lo tanto, pueden contratar entre sí. Además, arguyen que la sentencia extranjera no adjudicó la propiedad en cuestión, sino que solamente autorizó y recogió un acuerdo entre las partes. Por el contrario, la Registradora sostiene que la sentencia de Nueva York es realmente el documento adjudicativo de los derechos de los recurrentes sobre la propiedad sita en Puerto Rico, por lo que su validez debe ser verificada por un tribunal local.

La controversia que nos apunta la parte recurrente en su primer señalamiento de error ha sido objeto de estudio por este Tribunal anteriormente. Específicamente, hemos resuelto dos casos que, de uno u otro modo, han versado sobre la necesidad de la convalidación por nuestros tribunales de sentencias emitidas por las cortes estatales de los Estados Unidos. Véase: Roseberry v. Registrador, 114 D.P.R. 740 (1983) y Figueroa Pesante v. Registrador, 126 D.P.R. 209 (1990).

Los pronunciamientos de este Tribunal sobre este tema han sido un tanto ambivalentes. Aprovechamos la ocasión para, luego de un detenido y comprensivo análisis, establecer la normativa que debe regir con relación a la protocolización de las sentencias emitidas en los estados de los Estados Unidos y en países extranjeros para fines de inscripciones registrales.

**En Roseberry v. Registrador, ante, se nos planteó si viola la cláusula de "entera fe y crédito" de la Constitución de los Estados Unidos, el exigir que una sentencia emitida por un tribunal de algún estado de la Unión sea convalidada previa a su inscripción. Además, se argumentó que la sentencia de divorcio que se adjuntó como documento complementario de la escritura en ese caso no era una "ejecutoria" a tenor con el Artículo 45 de la Ley Hipotecaria.**

Respecto al primer planteamiento, resolvimos en Roseberry, ante, que las disposiciones pertinentes de la ley hipotecaria y su reglamento no confligen con la citada cláusula de la Constitución federal, ni con la legislación federal que posteriormente fue promulgada a esos efectos. Añadimos que

tampoco contravienen lo dispuesto en el Artículo 426 del Código de Enjuiciamiento Civil de 1933.

Asimismo, resolvimos que la cláusula de entera fe y crédito no opera *ex proprio vigore*, por lo que las sentencias de los estados de la Unión <u>no</u> son auto-ejecutables, sino que requieren la convalidación por un tribunal de Puerto Rico.

En cuanto al segundo argumento, descartamos el mismo en <u>Roseberry</u>, <u>ante</u>, señalando que era norma establecida por este Tribunal que las palabras "ejecutoria" y "sentencia" son sinónimos en contextos como el del caso. <u>Ramírez</u> v. <u>Registrador</u>, 96 D.P.R. 342 (1968). Además, concluimos que el propio Artículo 426 del Código de Enjuiciamiento Civil le restaba toda validez a su argumento. Por todo lo cual, resolvimos en dicho caso que había actuado correctamente la Registradora al denegar la inscripción.

Posteriormente, llegó ante nuestra consideración el caso de <u>Figueroa Pesante</u> v. <u>Registrador</u>, <u>ante</u>, donde se alegó que la sentencia estatal no constituía el título traslativo de dominio, razón por la cual no tenía que cumplir con el proceso de *exequátur*. En <u>Figueroa Pesante</u>, <u>ante</u>, explicamos que, a los fines de los requisitos para una inscripción registral, hay que distinguir entre el documento principal cuya inscripción se solicita y los documentos complementarios que se acompañan. Concluimos, mediante decisión dividida, que estos últimos documentos no eran inscribibles por sí mismos y que, por lo tanto, no requerían ser convalidados por un tribunal local.

Al comparar el caso de <u>Figueroa Pesante</u> con el de <u>Roseberry</u>, resolvimos que eran "distinguibles" porque en el primero la sentencia no adjudicaba la propiedad objeto de la donación, mientras que en el segundo la sentencia era la base fundamental del asiento practicado. Finalmente, sostuvimos en <u>Figueroa Pesante</u> que la sentencia sólo se presentó para demostrar que los ex-esposos podían donarse entre sí. Por tanto, la Mayoría razonó que no era necesario cumplir con el procedimiento de *exequátur*, ya que la sentencia de divorcio en controversia era tan sólo un documento complementario del cual no se fundó derecho alguno ni se adjudicó propiedad o participación en el inmueble.

**III**

La Ley Hipotecaria y del Registro de la Propiedad de Puerto Rico es extremadamente clara al señalar que se pueden inscribir en el Registro de la Propiedad las sentencias pronunciadas por

tribunales de los Estados Unidos de América o extranjeros, que deban ser cumplidas en Puerto Rico, "siempre que se disponga su ejecución por un tribunal local con jurisdicción". (Enfasis suplido.)

A tenor con la citada legislación, se incorporó en el Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad el Artículo 59.1 que lee como sigue:

> "Las sentencias a que se refiere el Artículo 45 de la Ley... se inscribirán siempre que estén contenidas en una resolución ejecutoria del Tribunal Superior recaída en un procedimiento ordinario del cual se dará conocimiento al Ministerio Fiscal, quien podrá comparecer de estimarlo conveniente en protección del interés público.

Están excluidas de este procedimiento:

> (1) Las sentencias y resoluciones promulgadas por los tribunales del sistema federal de los Estados Unidos.

> (2) Las sentencias de divorcio en los casos en que los cónyuges transfieran los bienes a un tercero, siempre y cuando la sentencia no contenga disposición en contrario." (Enfasis suplido). 30 L.P.R.A. sec. 2003–59.1.

> De acuerdo con la anterior disposición reglamentaria, para poder inscribir en el Registro de la Propiedad las sentencias extranjeras es requisito previo que se reconozca su validez mediante una resolución ejecutoria emitida por el tribunal de primera instancia en un procedimiento civil ordinario. Dicho procedimiento de convalidación y reconocimiento de sentencias extranjeras por los tribunales del foro donde se pretenden hacer efectivas ha sido tradicionalmente denominado como *exequátur*. Márquez Estrella, *Ex parte*, 128 D.P.R. 243 (1991).

El Artículo 59.1 del Reglamento Hipotecario fue enmendado en el 1992 para añadirle las dos excepciones que se consagran en su último párrafo. Estas fueron las únicas dos instancias en las cuales el Secretario de Justicia entendió que no se requería convalidar las sentencias mediante un procedimiento de *exequátur*.

El primer grupo de sentencias o resoluciones exceptuadas lo constituyen las promulgadas por los tribunales de la jurisdicción federal estadounidense. Como indica Vázquez Bote, "[o]bviamente, al ser en cuestión de su competencia, son ejecutivos *ex proprio vigore*, teniendo acceso al Registro de la Propiedad sin más trámite". La segunda excepción trata sobre sentencias de divorcios en los casos en que los cónyuges transfieran los bienes a un tercero.

Por otro lado, y recurriendo al estudio comparado del Derecho, encontramos que en España el equivalente a nuestro citado Artículo 45 es el Artículo 4 de su Ley Hipotecaria. Este último precepto indica que podrán inscribirse en el Registro de la Propiedad las ejecutorias pronunciadas por tribunales extranjeros a que deba darse cumplimiento en España, con arreglo a la Ley de Enjuiciamiento Civil. En el mismo sentido se expresa el Artículo 38 del Reglamento Hipotecario español, homólogo de nuestro Artículo 59.1 del Reglamento Hipotecario, al disponer que "[l]as resoluciones judiciales o laudos arbitrales dados en el extranjero serán inscribibles cuando hayan sido reconocidos por tribunal o autoridad competente, con arreglo a las leyes y convenios internacionales".

En cuanto a la inscripción de una sentencia extranjera en el Registro de la Propiedad de España, el Registrador de la Propiedad Camy Sánchez-Cañete nos explica que hay que "presentar la ejecutoria dictada en el extranjero, junto con el auto del Tribunal Supremo en el que se declare que ella tiene fuerza en España, como así mismo la traducción de la ejecutoria hecha con arreglo a derecho.... Todo lo demás en el orden registral se referirá a una calificación más de un documento judicial".

Un estudio detenido de las disposiciones legales y reglamentarias españolas pertinentes y de los comentarios a las mismas realizados por distinguidos juristas españoles, nos revela que toda sentencia extranjera, <u>sin distinción alguna</u>, debe ser sometida a un procedimiento de *exequátur*. El proceso de convalidación de las sentencias extranjeras variará dependiendo de si le son aplicables a éstas leyes o convenios internacionales que alteren el procedimiento. De no existir ningún acuerdo internacional aplicable, entonces se estará a lo dispuesto en la Ley de Enjuiciamiento Civil. Reiteramos que <u>no existe ninguna excepción</u>, ni en la Ley Hipotecaria española ni en su Reglamento, **que exima a ciertas sentencias extranjeras de ser convalidadas previa su inscripción**.

**IV**

Expresado lo anterior, pasemos a analizar si también en nuestra jurisdicción siempre que se presente una sentencia extranjera ante el Registro de la Propiedad, la misma debe venir acompañada de una resolución del tribunal de primera instancia en donde se confirme su validez. **Esto es, si hace alguna diferencia, para fines registrales, el hecho de que la sentencia extranjera se presente como el título principal objeto de inscripción o como un documento complementario**.

Según la doctrina científica, existen dos acepciones del término título: una sustantiva o material y otra formal o instrumental. Lacruz Berdejo explica que el título material es "la causa o razón jurídica de la adquisición, modificación, transmisión o extinción de un derecho"; mientras que título en el sentido formal "es el documento en que se constata o autentica aquella causa o razón".

Para los efectos de la inscripción, el Artículo 43 de nuestra Ley Hipotecaria recoge la acepción sustantiva cuando considera título "el contenido del documento o documentos públicos en que funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite".

Del citado artículo se colige que, en ocasiones, para que proceda la inscripción de un documento público se requiere la presentación de otro tipo de documentos; a saber, documentos complementarios y los documentos acreditativos del cumplimiento de las formalidades que sean requeridas por ley, según sea el caso. Así lo reafirma el Reglamento Hipotecario al señalar que "[l]os documentos complementarios y aquellos que acrediten el cumplimiento de formalidades requeridas no causarán un asiento de presentación en el Libro Diario sino que acompañarán al título principal".

Por otro lado, con relación al Artículo 33 del Reglamento Hipotecario español, que es el equivalente del Artículo 43 de nuestra Ley Hipotecaria, Sanz Fernández nos comenta que "al definir el título a [los] efectos de la inscripción, [se] admite la distinción entre el documento principal, el inscribible propiamente dicho, y documentos complementarios". Para dicho comentarista, el concepto de documento complementario a que alude el Artículo 33, aparte de completar el carácter fehaciente del documento inscribible, lo complementa "respecto de todos aquellos aspectos y circunstancias que siendo necesarios para la inscripción, no se acreditan y justifican directamente de

aquél". Además, nos dice Sanz Fernández que el documento complementario no es título a los efectos de la inscripción ni es un documento inscribible, por lo que no tiene que ser una escritura pública, ejecutoria o documento auténtico expedido por autoridad judicial o por el gobierno, pudiendo incluso ser un documento privado.

Por su parte, Camy Sánchez-Cañete, al distinguir en el orden hipotecario los documentos registrales de los documentos complementarios, nos expone la siguiente tesis:

> "... los [documentos principales], ... por exigencia del artículo 3.º de la Ley, serán los que recojan un acto o un negocio jurídico referente a un derecho real, o sea, uno de los títulos-causa que como inscribibles enumera el artículo 2.º de citada [sic] Ley Hipotecaria, en tanto que los segundos, o sea, los documentos complementarios, sólo contendrán un hecho o un dato que pueda ser necesario para la registración [sic] del documento que se pretende inscribir. Siendo posible incluso, que aún tratándose de un documento en sentido propio, o documento registrable, su presentación en el Registro no se realice con esa finalidad, sino con la de documento, en sentido general o documento complementario de otro, como, por ejemplo, puede ocurrir, con una escritura pública comprensiva de un negocio jurídico, la cual se presente sólo a los efectos de justificar la adquisición fehaciente anterior del transmitente en la escritura de adquisición que ahora se pretenda inmatricular.

Es así el contenido del documento y no la forma lo que sirve de base a esta clasificación, **puesto que el documento complementario no es un documento cuya forma sea de orden inferior a la del documento registrable**, **sino que incluso puede ser igual o aún superior en muchos casos**. Ahora bien, en tanto que en el documento registrable su forma es taxativa, como después veremos, **en los complementarios ésta queda atenida a los preceptos especiales que se refieran a aqu[é]l de que se trate en cada caso**." (Énfasis suplido).

A la luz de lo antes reseñado, somos del criterio que, los documentos presentados como complementarios, al igual que los títulos principales, tienen que ser válidos y que su validez debe ser establecida de acuerdo con las disposiciones aplicables a cada documento complementario en particular. Esto es así,

además, por imperativo del principio hipotecario de legalidad. Este principio requiere que los títulos que pretenden su inscripción en el Registro de la Propiedad sean sometidos a una verificación o calificación previa, a fin de que en los libros hipotecarios solamente tengan acceso los títulos válidos y perfectos. <u>Chase Manhattan</u> v. <u>Registrador</u>, Opinión y Sentencia de 26 de julio de 1994. La Ley Hipotecaria impone a los registradores la obligación de calificar, bajo su responsabilidad, la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Tal calificación abarcará las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en dichos documentos.

Sobre este particular, Sanz Fernández especifica que "... están, pues, sujetos a la calificación <u>toda</u> clase de títulos, cualquiera que sea su naturaleza –notariales, judiciales, administrativos o privados–, ya se trate del propio título inscribible **o de los documentos complementarios que, en su caso, sean precisos para la inscripción**". (Enfasis suplido.)

Esta misma dirección la sigue Roca Sastre al destacar que "en el Registro de la propiedad son presentados a registrar documentos complementarios [acompañando al título principal]. Sobre todos ellos naturalmente ha de recaer la calificación del Registrador de la propiedad, que ha de ser ejercida de acuerdo con las normas generales". En términos más específicos, Roca Sastre indica que "[p]or supuesto que, en su caso, los documentos complementarios o acreditativos de formalidades necesarias, deberán estar *legitimados* o *legalizados*, salvo tratándose de documentos privados que, incorporados con el título inscribible en el protocolo, el Notario afirme que conoce las firmas de los mismos que juzga legítimas". (Enfasis en el original.)

Asimismo, la Dirección General de los Registros y del Notariado de España, reconociendo la facultad de los registradores de solicitar documentos complementarios cuando en los documentos presentados faltan datos para calificar, ha resuelto que los registradores pueden negarse a inscribir un documento principal cuando los documentos complementarios extranjeros carezcan de la necesaria legitimación y legalización.

En vista de todo lo anterior, **concluimos que, para fines registrales, no hace ninguna diferencia que la sentencia extranjera en cuestión se presente como el documento principal a ser inscrito o como su documento complementario**. Además, enfatizamos que los documentos complementarios **no** son documentos

de segunda clase y que, por tanto, los mismos tienen que ser tan válidos como aquellos cuya inscripción se solicita. Por ende, cuando se trate de una sentencia extranjera, es deber del presentante acompañar con la sentencia copia certificada de la resolución del tribunal de primera instancia que haya establecido su validez mediante un procedimiento de *exequátur*.

## V

Un comentario final. Un análisis posterior de nuestra decisión en el caso de <u>Figueroa Pesante</u>, a la luz de los preceptos doctrinales esbozados, nos convence de que las **repercusiones** de la misma en nuestro sistema de Derecho Inmobiliario Registral **no** han sido las más deseables.

En primer término, la decisión establece que una sentencia extranjera que decrete un divorcio **sin adjudicar** propiedad alguna es sólo un documento complementario que no tiene que cumplir con el requisito de convalidación. Procede entonces preguntarnos qué sucede si la sentencia de divorcio es nula. La contestación inescapable resulta ser que la posterior escritura de liquidación, donación, cesión o traspaso sería nula también. Por tal razón, nos reafirmamos en que, aun como documento complementario, dicha sentencia debe ser convalidada. De lo contrario, se violaría el **principio de legalidad** al permitir la inscripción de negocios jurídicos nulos. Además, estaríamos ante un claro supuesto de inexactitud registral.

Asimismo, la decisión en **Figueroa Pesante** debilita la función calificadora del registrador de dos maneras: (1) en general, cuando se trata de documentos complementarios, el registrador no tiene facultad para exigir que se cumplan ciertas formalidades acreditativas de la validez de los mismos, ya que éstos no son el título principal; y (2) en específico, cuando se trata de sentencias extranjeras presentadas como documentos complementarios, al no permitirle que requiera a su presentante que convalide la referida sentencia.

Por todo lo anterior, **hoy resolvemos que, independientemente de que la sentencia extranjera adjudique o no alguna propiedad, ésta debe ser convalidada por un tribunal local**.

## VI

En el caso de autos, la sociedad legal de gananciales compuesta por los recurrentes era dueña de una finca de aproximadamente ocho cuerdas y de una vivienda construida en la misma. En la

sentencia de divorcio emitida por el tribunal de Nueva York se dispuso que la señora Sosa Hernández mantendría la titularidad del cuarenta por ciento (40%) de la finca, así como de la vivienda radicada en la misma. Al señor Guanil Igadavidez se le adjudicó el sesenta por ciento (60%) restante de la finca.

Por otro lado, en la escritura pública cuya calificación hoy revisamos, los recurrentes consignaron que la cabida correcta de la finca era de 28,336.75 metros cuadrados. En dicho documento, se dividió la finca en dos lotes de terrenos. El lote número uno cuenta con una cabida superficial de 15,935.363 metros cuadrados y el segundo con una cabida de 11,917.324 metros cuadrados. Ambos predios fueron tasados en diez mil dólares ($10,000.00). Al momento de dividir la sociedad legal de gananciales, los recurrentes adjudicaron al señor Guanil Igadavidez la titularidad del primer lote y a la señora Sosa Hernández la del segundo.

Al estudiar la división que hicieron los recurrentes en la escritura, notamos que la misma corresponde, porcentualmente, a la adjudicación que hizo el tribunal de Nueva York en su sentencia. En este sentido, la señora Sosa Hernández recibió el lote número dos cuya cabida representa, aproximadamente, el cuarenta por ciento (40%) de la propiedad, y el señor Guanil Igadavidez el remanente, es decir, un sesenta por ciento (60%) de la finca.

No hay duda, en consecuencia, de que la sentencia de divorcio otorgada en el extranjero es el documento que adjudicó los derechos de las partes; por lo que, procede que se verifique la validez de la sentencia, no por ser ésta el documento de donde surgen los derechos de las partes, sino porque como todo documento presentado, principal o complementario, su validez debe ser probada al registrador.

En resumen, resolvemos que toda sentencia extranjera debe ser sometida a un procedimiento de *exequátur*, tanto para su ejecución como para fines de inscripciones registrales; así sea presentada como el título principal o documento complementario, adjudique o no la propiedad. Cualquier pronunciamiento, contrario a lo aquí resuelto, contenido en **Figueroa Pesante v. Registrador**, **ante**, debe entenderse expresamente revocado.

## VII

Por los fundamentos anteriormente expuestos, se dictará Sentencia decretando que actuó correctamente la Registradora de

la Propiedad de Fajardo al denegar la inscripción de la escritura pública número 142 debido a que no se acompañó con la misma copia de la resolución del tribunal de instancia convalidando la sentencia que divorció a los recurrentes. Procede, en consecuencia, la confirmación de la nota denegatoria de inscripción. Se dictará Sentencia de conformidad.

**FRANCISCO REBOLLO LOPEZ**

Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Elizabeth Josephine Sosa

Hernández, Pedro Guanil

Igadavidez

Recurrentes

v. RG-96-4 RECURSO

GUBERNATIVO

Honorable Margarita M. Borrás

Marín, Registradora de la

Propiedad, Sección de Fajardo

Recurrida

**S
E
N
T
E
N
C
I
A**

San Juan, Puerto Rico, a 26 de junio de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando que actuó correctamente la Registradora de la Propiedad de Fajardo al denegar la inscripción de la escritura pública número 142, debido a que no se acompañó con la misma copia de la resolución del tribunal de instancia convalidando la sentencia de divorció de los recurrentes. Procede, en consecuencia la confirmación de la nota denegatoria de inscripción.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión concurrente a la cual se unió el Juez Asociado señor Corrada del Río. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita.


Isabel Llompart Zeno

Secretaria del Tribunal Supremo


**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Elizabeth Josephine Sosa

Hernández y otros

Recurrente

v. RG-96-4 Recurso

Gubernativo

El Registrador de la

Propiedad de Fajardo

Recurrido

Opinión Concurrente del Juez Asociado señor **Negrón García** a la cual se une el Juez Asociado señor **Corrada del Río**

San Juan, Puerto Rico, a 26 de junio de 1998

**Una sentencia extranjera de divorcio presentada en el Registro de la Propiedad** como documento complementario **no es un título inscribible y no le aplica el Art. 45 de la Ley Hipotecaria. Como tampoco contiene un decreto a ejecutoriarse vía el Registro de la Propiedad de Puerto Rico, no necesita** exequátur. **Elaboremos.**

I

Sabido es que un título, **para efectos de su inscripción** en el Registro de la Propiedad, es "el contenido del documento o documentos públicos en que **funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite.**" Art. 43 Ley Hipotecaria, 30 L.P.R.A. sec. 2206. (Enfasis nuestro). Este precepto expone las dos situaciones susceptibles de producirse con un documento público, a saber, aquel **autosuficiente, capaz de provocar exclusivamente** el cambio de titularidad del derecho o finca en cuestión, o **auxiliado** por otro documento **complementario**, necesario para producir tal efecto. Díaz González, Iniciación a los Estudios de Derecho Hipotecario, T. I, Madrid, (1967), pág. 295.

Por su parte, el Art. 58.1 del Reglamento Hipotecario diáfanamente prescribe que "los documentos complementarios y cualquiera que acredite el cumplimiento de formalidades **requeridas no causarán un asiento de inscripción".** (Enfasis nuestro). Es obvio pues, que el documento complementario no es título a los efectos de la inscripción; no sirve de base al dominio o al derecho real o al asiento practicable. Como tal, **tampoco es documento inscribible.** Su requerimiento se da cuando: "(1) por ley o por reglamento así se requiera para la inscripción de un documento; (2) del documento presentado al Registrador surja causa para creer que pueda ser inválido –Ríos Román v. Cacho Cacho, res. en 24 de junio de 1992; Preciosas Vistas del Lago v. Registrador, 110 D.P.R. 802 (1981)–, y (3), el propio documento no refleje su entera validez. Mojica Sandoz v. Bayamón Federal Savs., 117 D.P.R. 110, 129 (1986). **El documento inscribible es siempre el principal,** el complementario sirve para demostrar o lograr la inscribilidad de aquél, pero carece de autonomía a los efectos registrales. Complementa aquellos aspectos necesarios para hacer viable e inscribible el

principal. <u>Alameda Tower Assoc.</u> v. <u>Muñoz Román</u>, res. en 15 de enero de 1992.

Forzoso concluir que las sentencias de los tribunales de los estados de los Estados Unidos o extranjeras, **cuya única utilidad y propósito** en el Registro **es complementar** el documento principal, no son inscribibles, y no les aplica, repetimos, el Art. 45 de la Ley Hipotecaria. Sólo las que se pretenden inscribir, que se presentan como documento principal y **han de ejecutoriar** en Puerto Rico, están sujetas a <u>exequátur</u>. La Asamblea Legislativa, al así disponerlo, partió de la premisa de que dichas sentencias constituyen el documento principal inscribible o asiento practicable. No incluyó, –ni puede imputársele tal intención– aquellas que son meramente documentos complementarios y que no contienen ningún decreto a ejecutoriarse vía registral en Puerto Rico. No hemos encontrado tratadista alguno que expresa y directamente sostenga que las sentencias extranjeras presentadas como documentos complementarios deban tratarse igual a aquellas presentadas como documento principal, cuya inscripción se pretende y, exigírsele <u>exequátur</u>. Su propósito es dar reconocimiento y validez a las sentencias extranjeras, siempre que se pretendan **ejecutar en Puerto Rico**.

**II**

Respecto a las sentencias extranjeras de divorcio es importante diferenciar su naturaleza al momento de exigirse su convalidación a través del <u>exequátur</u>. Se ha distinguido entre aquellas que son meramente declarativas, constitutivas y de condena. Cuando la sentencia **ha de ejecutarse**, se exige el <u>exequátur</u>; no así cuando sólo ha de **reconocerse** para atender cuestiones de **estado civil** y **capacidad** de las personas. Así, una sentencia de divorcio "no condena a divorciados a volver a casarse, sino que extingue principalmente el deber de cohabitación y fidelidad, como uno de sus efectos. [...] [E]l divorcio como sentencia constitutiva no se ejecuta, y como **prueba de un estado civil se reconoce sin necesidad de <u>exequátur</u>**". (Énfasis nuestro). XII Congreso Internacional del Notariado Latino, <u>Valor y Eficacia de las Resoluciones de Divorcio en el Derecho Internacional Privado</u>, Estudio de la Delegación Argentina, Buenos Aires, 1973, págs. 94–95.

De igual forma la delegación española en el XII Congreso Internacional del Notariado Latino, compuesta por Vallet de Goytisolo, Fraguas Massip, Blanquer Uberos, Martínez Gil y Simo

Santonja, sostuvieron en su ponencia ante el referido Congreso, que:

> "[I]ndependientemente de la fuerza ejecutiva atribuida a la sentencia dictada por un Tribunal extranjero a través del procedimiento del 'exequátur', lo cierto es que en el ámbito del derecho internacional privado no puede sistemáticamente ignorarse la existencia, validez y eficacia de las sentencias dictadas por Tribunales extranjeros y de facto en la doctrina y en la práctica se les reconoce eficacia internacional en ciertos aspectos, **sin necesidad de la obtención del 'exequátur', fundamentalmente en cuanto a su valor probatorio, y como título constitutivo, declarativo o modificativo de un derecho o situación.**
>
> En especial cuando la sentencia se **refiere al estado o capacidad de las personas, como ocurre con las sentencias de divorcio, obtenga o no el 'exequátur', es preciso reconocer que constituyen un supuesto que ha generado ya sus consecuencias jurídicas respecto de los sujetos fuera de nuestras fronteras, y cuya eficacia y efectos no pueden ignorarse en el territorio de otros Estados.**" (Enfasis nuestro). XII Congreso Internacional del Notariado Latino, <u>Efectos de la Declaración de Divorcio en el Derecho Internacional Privado</u>, Madrid, 1973, pág. 38.

Sostienen que una sentencia de divorcio extranjera, "aunque no obtenga el 'exequátur', si cumple los requisitos de competencia, según las normas de conflicto, y no se opone al 'orden público' español, esa sentencia no puede ser ignorada, por lo menos en cuanto a sus efectos de valor probatorio y de título constitutivo o declarativo de derechos, o de un **'status'** o **situación jurídica.**" <u>Ob. cit.</u>, pág. 27. Ahora bien, aclaran que para que produzcan efectos generales, las Sentencias extranjeras, que no necesiten de <u>exequátur</u>, tienen que legalizarse formal y materialmente. Calificación que corresponde efectuarse al alegarse el "estado, condición o capacidad constituido por la sentencia, bien por Juez, en el

procedimiento, **al Notario como supuesto previo a la autorización, el Registrador de la Propiedad, al calificar el instrumento público que pretende su inscripción;** o al funcionario oficial ante el cual se alegue la modificación jurídica del estado, condición o capacidad de la persona..." <u>Ob. cit.</u>, pág. 40.

Esta ha sido la norma prevaleciente en Puerto Rico. En <u>Figueroa Pesante</u> v. <u>Registrador</u>, 126 D.P.R. 209 (1990), resolvimos que no debía requerírsele el cumplimiento del Art. 45 a una sentencia de divorcio que no adjudicaba derecho de propiedad y sólo era un documento complementario necesario, no base fundamental para el asiento practicable.

No podemos endosar la respetable posición mayoritaria que valora y equipara la sentencia de divorcio al documento principal inscribible, aplicándole el Art. 45 y requiriéndole, sin base legal e innecesariamente, un <u>exequátur</u>. En la práctica, **la decisión mayoritaria lleva el peligro de congestionar aun más los tribunales de instancia y demorar el tráfico jurídico inmobiliario.**

### III

En el caso de autos, la ilustre Registradora denegó la inscripción de la escritura pública núm. 142, sobre rectificación de cabida, segregación, constitución de servidumbre, liquidación y adjudicación de bienes, aduciendo que, según <u>Roseberry</u> v. <u>Registrador</u>, 114 D.P.R. 743 (1983), la Sentencia de divorcio dictada en el Estado

de Nueva York y presentada como documento complementario, debía cumplir con el procedimiento de <u>exequátur</u>, ya que adjudicaba a las partes un por ciento de los bienes del matrimonio. Al así hacerlo, no tomó en cuenta la norma pautada en <u>Figueroa Pesante</u> v. <u>Registrador</u>, <u>supra</u>.

**Aunque no es fundamento principal, la mayoría acoge implícitamente esa posición, al consignar que la susodicha Sentencia "dispuso que la Sra. Sosa Hernández mantendría la titularidad del cuarenta por ciento (40%) de la finca, así como de la vivienda radicada en la misma. Al Sr. Guanill Igadavidez se le adjudicó el sesenta por ciento (60%) restante de la finca." (Opinión del Tribunal, pág. 21.)** Es un error.

Primero, **las escrituras presentadas para inscripción no coinciden exactamente con los pronunciamientos en la Sentencia**

**de divorcio; sólo sobre la voluntad de los otorgantes en cuanto a la partición y liquidación de sus bienes gananciales.** Segundo, **de la propia Escritura surge que el matrimonio se rigió bajo el régimen de sociedad de gananciales. (Escritura Núm. 142, pág. 13).** Por ende, la Sentencia de divorcio no podía adjudicar los bienes gananciales, pues dicha sociedad de gananciales no terminó hasta que se disolvió el matrimonio; luego es que procedía su liquidación. **Código Civil, Art. 1315; González Cruz v. Quintana Cortés**, res. en 6 de mayo de 1998; **Vega v. Tossas**, 70 D.P.R. 392 (1949).

**Aclarada nuestra posición**, concurrimos **con la Opinión mayoritaria por el** único fundamento **de que la Registradora correctamente denegó la inscripción pues los presentantes** no acompañaron copia certificada de la Sentencia de divorcio, sólo copia simple.

ANTONIO S. NEGRON GARCIA

Juez Asociado

Retornar al índice anterior